IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:20CR262 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTIAN FERGUSON, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| Defendant. | ) | MOTION FOR PRE-TRIAL RELEASE |

Christian Ferguson is currently detained while awaiting trial set for May 3, 2021, after being indicted on two counts of attempted kidnapping, in violation of Title 18 U.S.C. § 1201 (a)(2) and (5) and (d). He now asks this Court to grant him pretrial release pursuant to 18 U.S.C. § 3142, however there is no change of circumstance from his prior motion for release. Simply, based on the facts of the case, and his prior conduct, the defendant remains a danger to the community and a risk of flight. Because Ferguson has not met the burden of establish pre-trial release is appropriate pursuant to § 3142, his request should be denied.

**I.   THERE HAVE BEEN NO CHANGES IN CIRCUMSTANCE, FERGUSON IS STILL A DANGER TO THE COMMUNITY AND A FLIGHT RISK**

Under the Bail Reform Act, the defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of either risk of flight or danger is sufficient for detention. See, e.g., United States v. Ferranti, 66 F.3d 540, 543-44 (2d Cir. 1995).

The government must prove the defendant presents a danger to the community and a risk of flight only by a preponderance of the evidence, not by clear or convincing evidence or other, more demanding standards. United States v. Namer, 238 F.3d 425, 2000 WL 187012, at *1 (6th

Cir. Dec. 12, 2000) (unpublished) ("However, the government need only demonstrate the risk of flight by a preponderance of evidence."); see also United States v. Alexander, 742 F. Supp. 421, 423 (N.D. Ohio 1990) (same).

At a detention hearing, the government may present evidence by way of a proffer. United States v. Stone, 608 F.3d 939, 948-49 (6th Cir. 2010) ("[C]onducting a bail hearing by proffer is acceptable under the law and at the discretion of the district court."); United States v. Webb, 238 F.3d 426, 2000 WL 1721060, at *2 (6th Cir. Nov. 6, 2000) (unpublished) ("The government may proceed in a detention hearing by proffer or hearsay.").

In assessing the risk of flight or danger to the community presented by the defendant, the Court must assess factors including (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)-(4). As set forth below, each of these factors weighs in favor of detaining the defendant, Ferguson.

    A.    <u>FERGUSON POSES A SIGNIFICANT DANGER TO THE SAFETY OF THE COMMUNITY AND THE § 3142(g) FACTORS STRONGLY WEIGH AGAINST HIS RELEASE</u>

Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant presents a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4).

Consideration of these factors supports the conclusion that Ferguson is a danger to the safety of any other person or the community.

        1.        <u>Nature and Circumstances of the Charged Offense, § 3142(g)(1).</u>

On May 20, 2020 Ferguson was charged with two counts of Attempted Kidnapping, 18 U.S.C. § 1201(a)(2) and (5) and (d), stemming from events leading up to his May 8, 2020 arrest. Ferguson was arrested on May 8, 2020 for an attempted plot to ambush and kidnap law enforcement officers responding to a false distress call. Over the course of several weeks, leading up to May 8th, Ferguson engaged in violent and extremist postings on cross-platform social media communication applications. In these postings, Ferguson discussed his desire to call police to report a false crime in progress to prompt a response by law enforcement. Specifically, he expressed an interest in a response by federal law enforcement because he believed they had better quality firearms and body armor to steal. He made statements about tactical options for killing multiple targets and the disposal of their bodies. He reaffirmed his plan to ambush law enforcement, kill them, rob them of their weapons, and start an uprising.

As a result of online conversations in a chatroom controlled by Ferguson, he met on several occasions with individuals to further discuss his plan in order to see it to fruition. Ferguson then engaged in practice drills with an AR-15 rifle and on May 8th conducted reconnaissance in a dry run. He ultimately facilitated a hoax distress call within the boundaries of the National Park to gauge response time by Park Rangers. Ferguson believed four federal officers arrived and indicated that if that many officers respond to the actual event, they would likely have to kill them all.

        2.        <u>Weight of the Evidence, § 3142(g)(2).</u>

The evidence against Ferguson is overwhelming. There are, and defense has copies of, several recordings during planning sessions and the final dry run in the Cuyahoga Valley

National Park during which Ferguson openly discussed his willingness to kill police officers, government officials, and others. At the scene, Ferguson spoke of these additional violent crimes as an inevitable consequence of his plot with little remorse or regard for the seriousness of such murders. Moreover, Ferguson produced a large amount of written evidence weighing against him through his online chat rooms. Ferguson sought out and encouraged the participation of people in his militia group, "The 75th Spartans," through posts encouraging violence against law enforcement and the government, and instigating armed conflict. Finally, after arrested, Ferguson confessed on video to his role, his willingness to escalate violence during the kidnapping and robbery of law enforcement, and his hatred of law enforcement.

      3.      <u>Defendant's History and Characteristics, § 3142(g)(3).</u>

Although Ferguson does not have an extensive criminal history, his pending cases before this Court and in Indiana, as detailed below suggest he is a poor candidate for a successful pre-trial release. Moreover, he does not have the characteristics warranting exception; as described below, he is young, healthy, and has few ties to the area.

      4.      <u>Nature and Seriousness of the Danger to any Person or the Community, § 3142(g)(4).</u>

Ferguson has engaged in serious criminal conduct given the facts and nature of this crime, and his outstanding case in Indiana. He has attempted to recruit individuals for armed violence, encouraged theft from law enforcement and military bases, and most urgently, taken steps to follow through on these plans. Ferguson's online posts cannot be dismissed as mere idle fantasy, he met in person on several occasions to plan and practice the violent acts he openly discussed. There is no reason to believe that Ferguson will do anything other than return to his criminal ways upon release.

This is underscored by a previous arrest, and pending case in Indiana arising from his resisting arrest after being stopped for traffic violations. After being stopped for a violation concerning his rear license plate, Ferguson fled and led the police on a chase where his speed was observed to be over 100 miles per hour before being stopped a second time.

Simply, Ferguson has engaged not only in criminal conduct that could endanger law enforcement, but that could also recklessly endanger the health and safety of innocent people enjoying a park or driving on a road.

Based on this record, the Court cannot find that Ferguson "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Accordingly, the Court should deny the motion for pre-trial release.

    B.    <u>FERGUSON REMAINS A RISK OF FLIGHT</u>

Even if Ferguson was not an ongoing danger to the community, he poses a risk of flight for a number of compelling reasons. First, and most importantly, his housing stability has only worsened since arrest. Prior to his arrest, he shared a house with his father rented from a family member. Since being incarcerated, his father has moved out of that residence and it is not clear if his current residence is an appropriate location for the defendant, or if it is even an option for him to continue to live with his father. Second, prior to his arrest Ferguson quit his job and was unemployed. Simply, he has few ties to this area. Third, he is facing pending charges for resisting arrest, flight, and other charges in Indiana stemming from an encounter with law enforcement during which time he attempted to flee. Finally, Ferguson does have ties out of state. Prior to his arrest, Ferguson maintained and supervised online chat rooms that promoted domestic terrorism and encouraged members to join his online group, the 75th Spartan group. Most of the members of these online groups are outside the state of Ohio.

The Government also asserts a half-way house would not be an appropriate setting for the defendant, or the other occupants in the half-way house. The defendant is facing the possibility of a significant prison term, a half-way house is not designed to detain a person, it is designed to help rehabilitate a person poised to re-enter society. Pre-trial detention is a form of custody to ensure presence, rehabilitation is a form of support for transitioning to a greater degree of freedom. Thus, it is inappropriate to expect staff at a half-way house to carry out the duties of a prison guard, likewise, it is unrealistic to expect the facilities of a half-way house to function as a pre-trial detention facility. Moreover, it is unfair and damaging to those residents of a half-way house to interfere with their progress to regaining their freedom and reentering society. Residents of a half-way house are there because they have successfully completed one phase of rehabilitation and are entering the most important next step, reentry. To introduce a person who is a different stage of this process creates a distraction for the others who have earned the right to live in a half-way house setting.

For these reasons, most compellingly, there is no identified or certain place for Ferguson to reside if released, and he has few ties to keep him in the area prior to trial and should be considered a risk of flight.

## II. CONCLUSION

For the reasons stated above, the Court should deny Ferguson's request for pre-trial release.[1]

Respectfully submitted,

BRIDGET M. BRENNAN
Acting United States Attorney

By:   /s/ Duncan T. Brown
      Duncan T. Brown (NY: 3982931)
      Assistant United States Attorney
      United States Court House
      801 West Superior Avenue, Suite 400
      Cleveland, OH 44113
      (216) 622-3933
      (216) 522-8355 (facsimile)
      Duncan.Brown@usdoj.gov

---

[1] While the government maintains that relief is unwarranted, if the Court grants Ferguson's motion for pre-trial release, the government requests that the Court require a 14-day quarantine period and medical clearance prior to release to minimize the possibility of any spread of COVID-19 to the public.