IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:20CR262 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | UNITED STATES' MEMMORANDUM |
| | ) | OF LAW IN OPPOSITION TO |
| CHRISTIAN FERGUSON, | ) | DEFENDANT'S RULE 29 MOTION TO |
| | ) | DISMISS |
| Defendant. | ) | |

Now comes the United States of America, by and through counsel, Bridget M. Brennan, Acting United States Attorney, Duncan T. Brown and Jerome J. Teresinski, Assistant United States Attorneys (the "United States"), and respectfully provides this *"Memorandum of Law in Opposition to Defendant's Motion to Dismiss Pursuant to Federal Rule of Criminal Procedure 29."* After being convicted by a jury, Christian Ferguson ("Defendant") now claims that he is entitled to relief because his inculpatory conduct could only have occurred on one day, and that the court erred in providing a legally appropriate instruction to the jury concerning the meaning of "On or about" as it relates to the substantial steps Defendant took (as alleged in the indictment) that Defendant over a span of at least three months, which culminated in his arrest on May 8, 2020.

The United States submits that the jury has spoken on this issue, as well as decided on the substantial steps that Defendant had taken to commit his crimes. The jury's verdicts were based on the sufficiency of Defendant's guilt beyond a reasonable doubt. Likewise, the Court's jury instruction in its totality, and for explaining the meaning of the phrase "On or about," was a standard Sixth Circuit Pattern Jury Instruction, and was appropriately given to the jury in this case. This Court should not disturb the judgment of the jury by overturning their guilty verdicts. Defendants arguments fail for the following reasons.

**I. STANDARD OF REVIEW**

After the fact-finder's rendering of a verdict, and upon a defendant's motion, a court may vacate any judgment and grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a)[1]. While courts have had trouble defining what actually constitutes the interest of justice, "it is widely agreed [to exist] where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (*citing United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004). Motions for new trial are strongly "disfavored and should be granted [only] with caution," *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001). Indeed, a Defendant bears a high burden to "do more than raise a 'serious suspicion' in order to demonstrate that he is entitled to a new trial." *United States v. Wheaton*, 517 F.3d 350, 362 (6th Cir. 2008). In evaluating whether to grant a new trial under FED. R. CRIM. P. Rule 33, the Court has broad discretion. *United States v. Lawrence*, 555 F.3d 254, 261 (6th Cir. 2009). *United States v. Davis*, No. 1:16CR260, 2019 WL 168325, at *1 (N.D. Ohio Jan. 11, 2019), *appeal dismissed*, No. 19-3093, 2019 WL 3562155 (6th Cir. Feb. 13, 2019), and *aff'd in part, remanded in part*, 970 F.3d 650 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1108, 208 L. Ed. 2d 553 (2021).

**II. THE SIXTH CIRCUIT PATTERN JURY INSTRUCTION OF "ON OR ABOUT" WAS PROPER AND BASED ON EXISTING PRINCIPLES OF LAW**

The Court's jury instruction in this case, explaining the meaning of "On or About," was proper and a legally appropriate instruction supported by existing well-established Model Pattern Jury Instructions and Sixth Circuit law. Despite the plain language of the Sixth's Circuit Pattern Jury Instruction, Defendant challenges it by arguing that the crime of Attempted Kidnapping should require proof of substantial steps limited to "only" a single day. Therefore, Defendant's

---

[1] Though the Court has not ruled on Defendant's motion to dismiss under FED. R. CRIM. P. 29, whether this motion is considered under the standards of FED. R. CRIM. P. R. 29, or R. 33, is of no moment. The same standards apply to either analysis and based on the totality of the evidence and the law in this case, Defendant's arguments fail.

logic continues, the court's instruction of the meaning of "On or About" was not a proper instruction.[2] Defendant's argument is misleading and lacks merit.

At the outset, the Defendant's erroneous use of the timing, or the proximity of the substantial steps that Defendant engaged in to complete the crimes of the Attempted Kidnapping, provides a useful starting point that demonstrates that the jury's verdict was proper and must not be disturbed. Simply put, the Sixth Circuit has endorsed a reading of "On or About" as appropriately given to a jury where crimes such as conspiracy, or as the United States averred in this case, an "attempt" of substantive crimes, where "the proof is often nebulous as to *exactly* when the crime occurred." *United States v. Neuroth*, 809 F.2d 339, 341–42 (6th Cir. 1987). By attempting to impose additional elements of a crime, not required by statute, such as temporal proximity of only "one day," the defense creates its own unsupported, and unsupportable legal burdens for the jury.

The parties submitted Joint Jury Instructions prior to trial. Those instructions included instructions for "On or About."[3] The instructions were taken from the Sixth Circuit Pattern Jury Instructions, and thus, are to be evaluated using a "plain error" standard. *United States v. Robinson*, 872 F.3d 760 (6th Cir. 2017). Simply, there was no plain error in providing this instruction to the jury as it comported with existing law.

The Sixth Circuit has also analyzed the instruction of "On or About" using a more case-specific analysis based on the whether a crime had to be committed on a specific date or time, or if the crime had elements that were less time specific. See *Id*.; *United States v. Fountain*, 2 F.3d

---

[2] **On or About A. Charge:** (1) Next, I want to say a word about the date mentioned in the indictment; (2) The indictment charges that the crimes happened "on or about" certain days. The government does not have to prove that the crimes happened on those exact days. But the government must prove that the crimes happened reasonably close to that date. **B. Authority:** Sixth Circuit Pattern Criminal Jury Instructions, 2019 Edition, Section 2.04

656 (6th Cir. 1993); *United States v. Ford*, 872 F.2d 1231, 1236 (6th Cir. 1989); *United States v. Neuroth*, 809 F.2d at 341–42.

Using the *Neuroth* standard, the Court's instruction in the instant case was appropriate. Like conspiracy cases, an "attempt," as defined by the Sixth Circuit, is nebulous because an attempt does not require a completed act, rather it requires a substantial step, **or steps**, that show a defendant's intent to complete a crime, in this case kidnapping. The Court's use of "On or About" in its jury instruction recognizes that an attempt allows a defendant to take one or more substantial steps that would lead to the completion of the crime. Despite Defendant's protestations, however, it does not restrictively create a proximate relationship between a substantial step and the completed crime. Defendant's insistence that only acts done on a single, specific date could qualify as "substantial steps" is simply not supported by any case law. Rather, when crimes, like conspiracy, or attempt, are dependent on completion of substantial steps that corroborate a person's intent, greater temporal latitude is given; thus this is reflected in the use of "On or About," in the instructions for such crimes.

Indeed, the "On or About" language does not lessen the government's burden to prove a certain, definable criminal act was completed, it recognizes that the formation of intent, the taking of steps to act on that intent, or doing acts that set a plan in action that will lead – beyond a reasonable doubt – to the completion of a crime, occurs over time and in ways that are not as definite or concrete as a completed criminal act. See *United States v. Neuroth*, 809 F.2d at 341–42; *United States v. Fountain*, 2 F.3d 656; *United States v. Ford*, 872 F.2d at 1236 (the court differentiates the use of "On or About" for completed crimes definite acts, e.g., like possession or sale of a controlled substance). In the instant case, the Defendant's "attempt" to commit the crimes of kidnapping includes numerous substantial steps that were taken by Defendant over a range of

dates where he acted on the intent he formed and defined over time. Here, there was no "completed act" of kidnapping (and would not be with an attempt), and the Court's use of "On or About" in its instructions to the jury were legally and factually appropriate and reflective of the "nebulous" nature of the elements concerning "attempt." *Neuroth*, 809 F.2d at 341–42.

### III. EVIDENCE SUFFICIENT TO CONVICT OF ATTEMPTED KIDNAPPING

In *United States v. Williams*, 704 F.2d 315 (6th Cir. 1983), the Sixth Circuit generally defined the two, *and only two*, requisite elements of an attempt as: "(1) an intent to engage in criminal conduct and (2) the performance of one or more overt acts which constitute a substantial step towards the commission of the substantive offense." *Id.* at 321. *Accord United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir.1989).

**A. Standard of Review Places Heavy Burden on Defendant that He Cannot Overcome**

The law for attempt in the Sixth Circuit is clearly defined and challenging the jury's finding of guilt post-verdict, places "a very heavy burden" on the Defendant. *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014). The Court should review the facts of the case using a *de novo* standard and:

> view the evidence in the light most favorable to the prosecution and the verdict upheld if any rational trier of fact could have found the contested elements beyond a reasonable doubt. The court cannot weigh the evidence nor assess credibility of witnesses. Circumstantial evidence alone is sufficient to sustain a conviction and need not remove every reasonable hypothesis except guilt. The court is confined to weighing the sufficiency of the evidence the government presented to the jury and may not consider the potential magnitude of evidence not presented.

*United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014).

**B. Proper Definition of "Attempt" Used and Supported the Jury's Guilty Verdicts**

When considering the elements involved in the proof for an "attempt" case, the Sixth Circuit continues to rely on *United States v. Williams*, 704 F.2d 315 (6th Cir. 1983) and its progeny, *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989); *United States v. Shelton*, 30 F.3d 702, 705

(6th Cir. 1994); 134 F.3d 340, 350 (6th Cir. 1998); and *United States v. Bilderbeck*, 163 F.3d 971, 975 (6th Cir. 1999). That reliance is not static, and refinements encourage an objective, and *expansive, not restrictive* construction of what is considered to be a substantial step. *See United States v. Bilderbeck*, 163 F.3d at 975("attempt is to be construed in a 'broad and all-inclusive manner'"); *quoting* United States v. Reeves, 794 F. 2d 1101, 1103 (6th Cir. 1986). The Sixth Circuit also characterizes evidence as sufficient to establish attempt if it shows that the "defendant's conduct goes beyond 'preliminary activities,' and 'a fragment of the crime [was] essentially … in progress.'" *United States v. Price*, *supra* at 351, *quoting United States v. Dolt*, 27 F.3d 235, 239 (6th Cir. 1994); *see also United States v. Hadley*, 918 F.2d 848, 853 (9th Cir. 1990).

Moreover, the proof of the substantial step need not be sufficient to prove the criminal intent, but only to corroborate it; the act and intent are ultimately separate inquiries. *Bilderbeck,* 163 F.3d at 975. The standard for evaluating the substantial step element is objective: whether any reasonable person could find that the acts committed would corroborate the firmness of a defendant's criminal intent, assuming the defendant did, in fact, intend to commit the crime. *Id.*; *See also United States v. Dworken*, 855 F.2d 12, 19 (1st Cir. 1988). In the instant case the jury did, in fact, find a substantial step or multiple substantial steps were taken and indicated so through their return of guilty verdicts for both counts.\

### C. Defendant Took "Multiple Substantial Steps" Corroborating His Intent

The trial evidence established Defendant took not only one substantial step to commit the crimes but took multiple substantial steps to do so. Each step corroborated his intent to commit kidnapping, and clearly went well beyond "mere planning." The jury's guilty verdicts established this with their verdicts, and thus, made it clear that they made a determination about the firmness of Defendant's criminal intent to commit the crimes. *Id at Dworken, supra.* The jury's verdict,

6

and their understanding of the evidence when applied to the legal instructions, demonstrates that the reasonable person standard was satisfied concerning a determination of the firmness of Defendant's intent. *See Bilderbeck,* 163 F.3d at 975.

Though the defense argues that the acts Defendant committed on May 8, 2020 were the sole and only acts that could be considered "substantial steps," such a construct is unduly restrictive and inapposite to the holding of *Bilderbeck* that endorses an "all-inclusive" approach. *Id.* Upon review, the context of which steps were taken when, shows that they corroborated the Defendant's intent to commit the crimes of kidnapping.

1. **Statements of Defendant's Intent to Commit Kidnapping**
   - Exhibits 101-108: Defendant makes statements about his desire to rob Federal agents of guns, ammunition and body armor and kill them if needed
   - Texts demonstrate intent/intended action corroborates subsequent substantial steps
2. **Substantial Steps taken from April 14-April 18:**
   - Exhibits 109-112: Defendant has members of his group vet CHS 1
     - Texts show Defendant intended to look for people who would carry out his plan and was doing more than mere planning and actively recruiting members for his militia to be, as he described, "operational." Defendant repeatedly mentioned that identifying ready soldiers was a necessary early substantial step
3. **Substantial steps on April 18:**
   - Defendant meets with CHS at location picked out by Defendant.
     - Defendant proactively set this meeting up and moved the conversation from the Internet to in person, by not merely talking, but meeting and physically acting on his words, the Defendant took a substantial initial step towards completing his plan.
   - Exhibits 115 and 116: Defendant declares to two members of his group separately in two texts that he personally approves of CHS as a member of the 75th Spartans.
     - The steps should be considered substantial because the Defendant stated multiple times that he needed at least three militia members for the first strike. He used words like soldiers or "killers" to describe both CHS's and their roles in the Spartan 75th. Without the two CHS's the Defendant's plan would not have moved forward.
4. **Substantial steps taken prior to May 2:**
   - Exhibit 117: 4/24/20: Defendant agrees to meet at Camp Belden with express interest in training in military combat and tactics with CHS 1.
     - As with his desire to shoot, the Defendant identified receiving training as a necessary step for completion, this training would fill that need.
   - Exhibit 120: 4/28/20: Defendant agrees to CHS2 to join and describes plan to CHS1.
     - The substantial step taken here is to confirm enough members of the operational militia at a training operation.
   - Exhibit 121: 4/28/20 Defendant announces full plan to group on private channel.

- Exhibit 122: 4/28/20: Defendant explains plan in detail to CHS1 on private channel.
    - These two communications are more than planning, they are sending what turned out to be the final plan out to who the Defendant trusted most, his core group of militia members and who he believed to be his two soldiers.
- Exhibit 123: 4/29/20: Defendant says Camp Belden meet is to train to make sure "we don't have any loose ends for cruiser plan."
    - This is a substantial step because Defendant sees the training as the final step to "tie up loose ends," not "see what works, propose ideas, engage in a marketplace of ideas." This statement shows that the May 2 training, in the mind of the Defendant, was the final step to achieving his plan.

5. **Substantial steps taken on May 2:**
    - Defendant shows up to Camp Belden with the intent to learn and practice combat techniques to use in his plan.
    - Defendant shows up to meet both CHS1 and CHS2 who he believes will be his soldiers.
    - Defendant shows up to Camp Belden with a loaded AR-15 rifle and does not unload it until almost an hour into the drilling.
        - These three acts are substantial steps because, as at the April meeting, the Defendant showed up, and this time showed up with the expectation of gaining knowledge and allies needed to complete his crime.
    - Exhibit 207:  Within 4 minutes Defendant tells CHS2 about his plan and makes comments that he does not care if the ATF or other agencies try to stop him because he is "loaded."
    - Exhibit 208:  Within 13 minutes of meeting CHS2 he tells both CHS1 and CHS2 his plan in detail including the plan to lure police using a false distress call.
        - These two steps demonstrate that the Defendant had taken the steps to accept both CHS's and wanted to instruct them on his plan for a successful militia operation.
    - Exhibit 209:  Defendant says his message is that "Spartans are out killing cops."
        - Defendant demonstrates the intent driving all of his actions from this point on.
    - Exhibits 210 and 211:  Defendant draws in detail the plan in the sand, demonstrating firing angles, cover locations, and other details from where he expects his soldiers to execute.  He uses orders such as "Shoot to kill," and "I don't care" if there are police casualties, and that "torching the bodies" is "OK."
        - Defendant takes the substantial step of detailing the plan, directing expectations, and defining actions needed for success, this goes beyond mere planning.
    - Exhibit 212:  After laying out the plan and the expectations, Defendant tells both CHS's "once you are in, you're in, I will kill all Judases."
        - Defendant takes the substantial step of indicating withdrawal will be punished and cements cooperation going forward.
    - Exhibit 213:  Defendant states "online I look like a 15 year old, I'm actually a 20 year old looking to kill."
        - Defendant took the step to confirm his intent and that his online personas were created to cause misdirection of those investigating him.
    - Exhibit 214:  Defendant states he wants to do the assault in late May or early June.
        - Defendant establishes a timeline very proximate to the actions of May 2 and 8.

6. **Substantial steps taken prior to May 8**
   - Exhibits 125 and 126: 5/4/20: Defendant has conversation with CHS on private channel about May 3 police encounter where he says he wanted to shoot police but controlled himself because of plan.
     - This is a substantial step towards the completion of the plan because of what the Defendant *did not* do and why; rather than shoot officers on May 3, he disciplined himself because he believed his plan would soon start.
   - Defendant makes ongoing comments about buying additional weapons and then changes mind because he can get what he wants from police after "raid."
   - Defendant continues to negotiate prices for handguns and rifle barrels.
     - These two conversations also show the Defendant's regulation of himself after the May 2 meeting, rather than trying to purchase many weapons, he starts thinking in terms of buying versus stealing from law enforcement.
   - Defendant has multiple ongoing conversations about killing governors, politicians and getting militias involved in post "raid" operations.
   - Defendant speaks at least seven times about his attempts to find safehouses and forts for the 75th Spartans to use.
     - Both of these statements show that the Defendant has confirmed in his mind that the plan will occur and is finalizing the details of what will happen *after* its successful execution.

7. **Substantial steps on May 8**
   - Exhibit 215 /Online texts: Defendant agreed to 500 Truxell Road as a good site to lure police.
   - Exhibit 215: Defendant willingly drove to 500 Truxell Road with CHS1 and CHS2 and detailed every aspect of the plan on the way.
   - Exhibits 216 and 217: On way, Defendant talks about next steps, i.e. killing governors, senators, and establishing a base for the items they would steal.
     - These are substantial steps because the Defendant shows up and willingly goes to a site where the crime can be committed. This goes beyond mere planning and is, as Defendant described on May 2, "tying up loose ends."
   - Exhibit 219: Defendant wants this to serve as calling card and link them to 3% militia.
   - Exhibit 221: As the Defendant arrived at 500 Truxell Road he declared "I've made my peace and I am ready."
     - The government avers this is akin to the martyr statement in International terrorism cases where the actor declares his willingness to die for his cause, the ultimate sign of commitment to the action.
   - As they move from the parking location to 500 Truxell Road, Defendant is seen leading the others across rugged terrain.
   - Exhibits 222, 223, 227, 228, 232: As Defendant approaches 500 Truxell Road he identifies points of strategic importance, continuing to become more specific and tailored (per his plan).
   - Defendant declares the location "perfect."
     - These two statements show the substantial steps of solidifying the plan in real time, space and location. The Defendant has taken the substantial step from online discussion to finding and training a squad, and here he plots the final movements for his crime.

- Exhibit 226: Defendant declares, before CHS1 can stop asking, "I'm in" and "I'm down" once they arrive at 500 Truxell Road.
    - As with the Defendant's statements on May 2 about requiring commitment, he enthusiastically affirms he is not withdrawing from the crime.
- Exhibit 225: Defendant says shoot one and there will be 29 more rounds of ammunition for other police officers who disobey his orders.
- Exhibits 231 and 232: As planned, the Defendant agrees to have a false distress call made on May 8 so they can see response and understand timing.
- Defendant stays hidden and watches the response.
- Exhibit 233: At the parking area Defendant describes what he saw and says that the only change in plan is they will need more explosives and to kill all of the police.
    - These three substantial steps show more than mere planning, they show Defendant carrying out all contingencies/dry run to make sure there are no surprises.
- Start of Defendant's confession, he wanted to act on his desire to get back at police.
- Defendant confessed all the steps he took were to detain, rob and kill police.
    - At least twice in his confession the Defendant admits his actions were substantial steps corroborating his intent to kill police.

Each one of Defendant's steps outlined above, when viewed within context, and inclusively as directed by the *Bilderbeck* court, constitute "substantial steps" Defendant took that went beyond mere planning, and corroborated his intent to commit the crime of kidnapping. There is no temporal proximity issue here, nor a legal requirement to "complete a kidnapping" (as defendant suggests). Defendant's arguments are contrary to Sixth Circuit law.

IV. CONCLUSION

The jury was properly charged under Sixth Circuit law, their guilty verdicts were based on sufficient evidence, and must not be disturbed. No legal basis exists to require all substantial steps for an "attempt" to occur on one day, or be temporally proximate to the attempted completion of the crime, these are constructs manufactured by Defendant. Permitting Defendant to parse days or acts in this way invades the province of the jury, who weighs any or all of the admissible evidence as they wish, *United States v. Lively*, 852 F.3d 549 (6th Cir. 2017), and do not need to

agree unanimously as to which particular act or actions constituted a substantial step toward the commission of a crime. *United States v. Hofus*, 598 F.3d 1171, 1176 (9th Cir. 2010).

                                              Respectfully submitted,

                                              BRIDGET M. BRENNAN
                                              Acting United States Attorney

By:   /s/ Duncan T. Brown
        Duncan T. Brown (NY: 3982931)
        Jerome Teresinski (PA: 66235)
        Assistant United States Attorneys
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3933/3658
        (216) 522-8355 (facsimile)
        Duncan.Brown@usdoj.gov
        Jerome.Teresinski2@usdoj.gov