1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                         EASTERN DIVISION

3
        UNITED STATES OF AMERICA,      Case No. 5:20-cr-262
4                                      Cleveland, Ohio
                    Plaintiff,
5
            vs.                        TUESDAY, SEPTEMBER 29, 2020
6
        CHRISTIAN FERGUSON,
7
                    Defendant.
8

9
                TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
10                   *HELD VIA ZOOM VIDEOCONFERENCE*
                BEFORE THE HONORABLE SOLOMON OLIVER, JR.
11                    UNITED STATES DISTRICT JUDGE

12

13      APPEARANCES:

14      For the Government:       Om M. Kakani,
                                  *Assistant United States Attorney*
15

16      For the Defendant:       Carolyn M. Kucharski,
                                  *Assistant Federal Public Defender*
17

18

19

20
        Chief Court Reporter:    Sarah E. Nageotte, RDR, CRR, CRC
21                               United States District Court
                                 801 West Superior Avenue
22                               Court Reporters 7-189
                                 Cleveland, Ohio 44113
23                               (216) 357-7186

24

25         Proceedings recorded by mechanical stenography, transcript
              produced with computer-aided transcription.

```
              1              (Proceedings commenced at 3:33 p.m.)

              2                           -  -  -

              3              THE COURT:  Good afternoon.

              4          Is everybody ready?

15:34:03      5                  MR. KAKANI:  Yes, Your Honor.

              6                  COURTROOM DEPUTY:  Call the case?

              7                  THE COURT:  Yes.

              8                  COURTROOM DEPUTY:  Your Honor, the case before

              9      the Court carries Case Number 5:20-cr-262, United States of

15:34:14     10      America versus Christian Ferguson.

             11                  THE COURT:  Good afternoon.

             12          Will counsel for the United States introduce himself

             13      for the record.

             14                  MR. KAKANI:  Yes.  Good afternoon, Judge.

15:34:25     15          Om Kakani on behalf of the United States.  I am here

             16      on behalf of AUSA Duncan Brown.

             17                  THE COURT:  I didn't mean to say herself.  I

             18      think I said herself, but --

             19                  MR. KAKANI:  No worries, Judge.

15:34:39     20                  THE COURT:  Will counsel for defendant

             21      introduce herself for the record.

             22                  MS. KUCHARSKI:  Carolyn Kucharski on behalf of

             23      Christian Ferguson.

             24                  THE COURT:  All right.  And the court reporter

15:34:49     25      is present and taking down what we say.  And my courtroom
```

1    deputy is also present.

2            And, Mr. Ferguson, Mr. Christian Ferguson, you are

3    present by way of Zoom videoconference today also.

4            Isn't that correct?

15:35:04  5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  All right.  We're holding this

7    conference by Zoom, Zoom videoconference, because we're not

8    holding in-court proceedings now.  I haven't been holding

9    any.  And the reason -- the reason is because of the

15:35:22 10   coronavirus.  And that's pretty consistent throughout our

11   court.  There may be a few exceptions made for compelling

12   reasons, but, really, because of the virus, our orders say

13   very clearly that we are not to hold in-court proceedings,

14   so that's why we're doing this by videoconference.

15:35:44 15           I set this down, Mr. Ferguson, because I had received

16   letters from you and other requests.  Normally, of course, a

17   defendant will speak through his or her counsel.  So if

18   there's a request or a motion, then you will communicate

19   that through your counsel, your counsel will advise you as

15:36:14 20   to whether it makes sense to do what you're asking, then you

21   will come to some decision about whether you will move

22   forward through counsel.

23           But we normally are not -- I'm not taking letters or

24   other kind of information from defendants, but I'm normally

15:36:36 25   looking to counsel for a lot of reasons.  One is because

1    counsel is familiar with the Court, how the Court operates.

2    Counsel knows how to put requests into proper form.  The

3    other is that if you communicate too much, you may very well

4    communicate some things that you don't want to reveal to the

15:36:59  5    Government.  And I'm not saying you have to be secretive

6    about anything, but it's just that you have to use

7    discretion in terms of your communications.

8        You should be aware that when you communicate with me

9    that it's not confidential.  I don't have confidential

15:37:17  10    relationships with the parties or their counsel.  So

11    anything that you share with me, I'm free to share that with

12    the parties.  And, you know, I'm trying to protect you by

13    suggesting that you work in the normal way.

14        Now, I don't mean to say that there is never a time

15:37:46  15    when a defendant should contact the Court or should try to

16    communicate with the Court in writing, I can't say there's

17    never a time because sometimes there's a compelling reason,

18    and if a defendant feels that he or she has no other

19    recourse and they cannot request the Court -- I'm sorry --

15:38:11  20    they don't feel they can request through their lawyer that

21    the Court hold a hearing or the Court would convene a

22    proceeding to hear their issues.

23        So I'll stop there, but I wanted to be clear at the

24    beginning that -- that that's a normal process.

15:38:28  25        Now, I know you know the coronavirus has been -- has

1    been a problem for us all, and we try to work through it,

2    but it has been a problem.  Before I hear from you, the

3    things that are on your mind, I'd like to hear from Ms.

4    Kucharski in terms of the status of the case, things that

15:38:53 5    have been going on throughout the case, whether there have

6    been any discussions about possible pleas, those other kinds

7    of things before I hear from Mr. Ferguson.

8            MS. KUCHARSKI:  Your Honor, I have received

9    discovery from the Government, and discovery is complex in

15:39:11 10    the format that they provided it to the defense, which we

11    discussed at an earlier pretrial.

12        And I know, or I believe, that that's one of the

13    sources of frustration for Mr. Ferguson.  Although, I did

14    place some discovery on a CD and had that sent down to CCA

15:39:32 15    so he could begin to review some of that discovery.

16        I have had discussions with the Government by way of

17    where they saw Mr. Ferguson's guidelines, and these were

18    with Mr. Brown, not Mr. Kakani, and there are -- I should

19    say, there's a big difference where each side sees the

15:40:01 20    guidelines.

21        I have been in communication with Mr. Ferguson, but I

22    will agree that our communications are very unproductive.

23    We just, you know, have not managed to work past some

24    issues, to the point now where I understand he placed in the

15:40:27 25    letter that he wanted to have me removed from the case and

1   have new counsel appointed.

2       And while I don't normally take those things lightly

3   or -- or concede that there should be new counsel, in this

4   case, because we just really cannot or have not been able to

15:40:52 5   communicate at all, and, you know, most of the time he's

6   hanging up on me, and I will admit, too, that I lost my

7   temper with him as well, I almost think that it's beneficial

8   at this point for him to have new counsel.

9       We have a very big disagreement.  And this is one of

15:41:15 10   the things that we cannot get past.  As the Court's aware, I

11   filed a previous motion for bond, which was denied by the

12   Court.  And Mr. Ferguson believes that I have to file

13   another bond motion every 30 days.  And I basically told him

14   that I was not going to do that, and that's a big issue

15:41:39 15   between us and we can't ever really move past that because

16   he's fixated on that.

17           THE COURT:  Well, one of my concerns -- I'll

18   hear you out -- but one of my concerns would be, what if I

19   appointed a new counsel and it sounds like we may have the

15:41:57 20   same problems?

21       Because when a lawyer is a professional, he is not

22   going to do necessarily whatever he or she is told to do if

23   they feel like there is no reasonable basis to do it.

24       Lawyers are an officer of the Court and if you know,

15:42:16 25   for example, filing a motion for bond every 30 days is not

1    likely to enure to anybody's benefit, then you're not likely

2    to file one.  And I don't know of any counsel, maybe there

3    is somebody, who would do such a thing.

4         So if those are the kinds of requests that are making

15:42:35  5    it difficult for you to work with Mr. Ferguson, then he

6    might as well stay with you because I don't think that other

7    lawyers would be listening to that either.

8                   MS. KUCHARSKI:  Well, and I -- and I

9    understand the Court's point, Your Honor.

15:42:48  10        That's just one example.  And I almost feel like, you

11    know, maybe he'd be more receptive to a male lawyer or

12    another lawyer telling him that, you know, I'm not telling

13    him things that are not true.

14         So I -- I just think -- you know, I guess we'll hear

15:43:11  15    from Mr. Ferguson and see what his thoughts are, but --

16                   THE COURT:  Do you have the impression it's a

17    male/female issue?

18                   THE DEFENDANT:  No, I don't.  I'm sorry.

19                   MS. KUCHARSKI:  I --

15:43:23  20                   THE COURT:  Let her finish.

21                   MS. KUCHARSKI:  I believe that's part of it.

22                   THE COURT:  All right.  Because I'll hear from

23    him, but I have no tolerance for that.  You know, the female

24    lawyers who come before the Court should be presumed equally

15:43:44  25    competent as any male lawyers, and, in my experience, that's

1    not a dividing line between whether you're a male or a

2    female.

3         But I understand what you're saying, Ms. Kucharski.

4    Don't misunderstand me.  I understand you.

15:43:58  5         Mr. Ferguson, you may speak.  Be careful not to reveal

6    any confidences -- any confidential information that could

7    be detrimental to your case in doing so.

8              THE DEFENDANT:  Yes, Your Honor.

9         Mainly, I don't see a problem with the gender.

15:44:16  10    There's nothing, like, just because Ms. Kucharski is a

11    female, I don't see that as a problem.

12         The problem I'm having is that mainly every time I try

13    to call, the beginning of May, I was always getting cussed

14    out saying:  I did file blank and blank.

15:44:29  15         And then, also, every time I -- I try to hold my

16    tongue and I don't swear or anything like that, but every

17    time I try to ask her:  Can we put this in the bond?

18    Because I'm looking on the computer, because we have a law

19    library, and I was trying to look on the computer, like,

15:44:43  20    trying to find ways I can help to defend myself and do

21    whatever I can, and I was trying to say that, but she

22    wouldn't include any things into my bond when I put the

23    first motion in.

24         And then, mainly, when I was -- I talked with --

15:44:53  25    there's counselors here that you can talk about your case

1    with confidentially and they -- I was trying to tell them

2    what can -- what type of things can I do to prove my

3    innocence and everything, and when I try to bring that to

4    Ms. Kucharski, I never could -- it was always butting heads.

15:45:06    5    It -- usually, whenever I tried to call, I even tried

6    to call my grandmother and, like, say -- I try to tell her

7    what's going on, like, why this -- I -- like, I need to find

8    a new lawyer because, mainly, every time I call, nothing is

9    being put in.

15:45:19    10    I wasn't saying to put a bond motion in every 30 days.

11    I simply saw on the Bail Reform Act that I -- that I looked

12    on the law library that every 30 days that a defendant can

13    apply.  I wasn't saying I was going to do it every month for

14    May, June, July.

15:45:34    15    It's mainly -- I meant to put one in in May because

16    I'm trying to get my address confirmed, I just needed to get

17    the phone number after so I was ready to go, but once it got

18    denied, I realized I had to wait at least 30 days and try

19    again.

15:45:44    20    But in my second motion, like I had wrote to you, I

21    was trying to prove to you in saying that this is what I

22    have proven, this -- and I give you a background of what I

23    am.  I'm not what the Government is trying to say I am.  I'm

24    not that type of person.  I was trying to put that into my

15:45:58    25    first motion, but, unfortunately, it was failed to do so.

1    The only thing I got to put -- the problem with the

2    first motion, I feel it was rejected is why -- because it

3    looks like I'm just some young kid just trying to say you

4    can let me out because I have a history of asthma.  I was

15:46:09  5    trying to say there was more reasons behind that, but,

6    unfortunately, I didn't get to express every last reason.

7    And that's the reason why I felt I had to get new

8    counsel, because I feel like the counsel doesn't really care

9    about my case truly, and, really, I'm trying to fight for my

15:46:24  10    life.  I don't want to spend life in jail or any time -- any

11    more time in jail for something I didn't do, and I was

12    trying to express that, but, unfortunately, I never could

13    get that through to you.  That's the reason I was thinking

14    that it's best if I just get a new lawyer.

15:46:34  15    But there's no prejudice.  There's no -- like I said,

16    I don't see a problem with no race, no color.  I've [Zoom

17    audio interference] Rastafari and I don't see a gap in

18    anything just because you're male or female, black, white,

19    Asian.  It doesn't bother me at all.  So I just want that on

15:46:46  20    the record.  I don't see that as an issue.  That's not an

21    issue.

22    The issue is, the reason I want a new lawyer is

23    because I want someone who is actually going to fight for me

24    and actually can see that I am trying to tell the truth, not

15:46:55  25    just someone looking at me like I'm just another number or

1 statistic, because I'm not.

2          THE COURT:  Okay.  Let me -- let me just make

3 a couple of comments, and then I'll decide about whether you

4 get a new lawyer or not.

15:47:10 5      I hear what Ms. Kucharski has said about she perhaps

6 thinks that might be a better course too.

7      One, there's no question, lawyers should be

8 professional and they should treat people courteously.  But

9 I can tell you this, the lawyers know, and they don't have

15:47:29 10 to take abuse from people that they're defending, and they

11 don't have to -- you know, hanging up and all that kind of

12 stuff on them, that is not to be tolerated by any lawyer who

13 is working in the federal court.  I don't believe that they

14 would put up with it.

15:47:51 15      The second thing, they're likely to be turned off --

16 it doesn't mean that you ever turn your back on good

17 information, but the likelihood to be turned off and hearing

18 continually about what someone in the jailhouse is telling

19 you about how you can defend yourself, most lawyers are

15:48:10 20 going to be totally turned off by that, because they're

21 lawyers and they're there to defend you and they know how to

22 put together a case.

23      And a lot of stuff, the advice that you get down

24 there, gets your head thrown off, and that's hard for

15:48:25 25 somebody to put out for you.  That's going to be a fact.

1          The first thing that's going to happen, if you get a

2     new lawyer, they're going to be very strict with you.

3     They're going to sit down and they're going to tell you:

4     Look, I'm here to defend you.  I've been a lawyer for 20

15:48:39  5     years, 25 years.  I've handled these kinds of cases, many of

6     them.  Now -- and I know how to go about defending you the

7     best I can.  I don't -- I'll listen to you.  You tell me

8     what you think, and then I'll tell you what I think you

9     should do.

15:48:54 10          There's two different things:  You tell me what you

11     think and I tell you what you should do.  Then you're going

12     to have some respect for the person who is telling you,

13     based on the experience, what you should do.

14          It doesn't go like they're going to -- it's your case,

15:49:09 15     you're right, and if you want your case, then the lawyers

16     will give it to you.  You will handle it by yourself.  You

17     won't have a lawyer, period, after a while.

18          So I just want you to know there's something about

19     what you're saying, these bond motions, you seem to kind of

15:49:26 20     just rattle them off and file them every so often, that

21     doesn't do a bit of good.  If you're going to file a bond

22     motion, a new bond motion, you're going to have to have some

23     new, compelling information in it that wasn't available

24     before and wasn't presented before.  You can't assume that

15:49:46 25     you keep filing them, you're going to get it.

1      Now, I'm not saying you'll never get it on the second

2   chance.  I'm not saying that.  Because I won't prejudge a

3   motion.  So I'm just trying to tell you, you can't have an

4   attitude or you'll be dashed down.  The good lawyers I know

15:50:06  5   will not put up with it and they will tell you point-blank:

6   I'm not doing it, because what you're giving me to do,

7   asking me to do is going to, at least if it doesn't hurt

8   your case, it's not going to help you.

9      And sometimes they will tell you:  This is going to

15:50:24 10   hurt your case because all it will look like is that you're

11   just throwing papers at the Court, and they have credibility

12   that they have to have with the Court if they want to be

13   viewed as effective.  Nobody is going to respect a lawyer

14   who just files anything that a defendant tells him to file.

15:50:43 15   It's not going to happen.

16      I'm just trying to tell you that.  You'll be butting

17   heads with the next lawyer as much as you butted heads with

18   Ms. Kucharski if you take that position.

19      Now, I'm going to give you a new lawyer, but I'm going

15:51:00 20   to tell you what, I don't feel like I have to give you a new

21   lawyer under the law.  Let me be clear.  I want you to have

22   a lawyer of your own choosing, so to speak, and -- but I've

23   appointed a lawyer for you, I appointed a competent lawyer

24   for you.

15:51:18 25      What I hear from her and from you doesn't tell me that

1    she's not doing her job.  It does tell me that you've got

2    some differences.  I'm not sure they're irreconcilable.  But

3    I will err on the side of making sure that you have somebody

4    that you would like to have.  I will err on that side.

15:51:39  5         So I don't know at this moment who the new counsel

6    will be.  I'll have to look over the roster and appoint you

7    new counsel, and then I'll inform you -- I'll inform new

8    counsel that they have your case and they'll be in contact

9    with you.

15:51:58  10         That's what I intend to do --

11                   THE DEFENDANT:  Okay.

12                   THE COURT:  -- based on your request.

13         I want you to have another opportunity to confer with

14    a lawyer, and I don't want you to continue to feel like Ms.

15:52:13  15    Kucharski is not selling your case or that there's some

16    problems in your case because of her.  I haven't found any

17    problems with her representation, but I don't want you

18    feeling that way.

19         I want you to start out fresh with somebody new, tell

15:52:28  20    them what's on your mind, and then you've got to respect

21    them, because they're not you, they're your lawyer.

22         You understand that?

23                   THE DEFENDANT:  Yes, Your Honor.

24                   THE COURT:  Now, you know what happens when

15:52:43  25    you get a new lawyer?  It means that it will take a bit of

1    time for the new lawyer to get up to speed before they can

2    then move ahead.  That means that they've got to get all the

3    information from Ms. Kucharski.  They've got to get all the

4    discovery.  They've got to become familiar with it.  And

15:53:03   5    then they've got to get in touch with you and become

6    familiar with you, what you're interested in doing.  And so,

7    it's going to take some additional time.

8         You understand that?

9                   THE DEFENDANT:  Yes, Your Honor.

15:53:14  10                   THE COURT:  All right.  Ms. Kucharski, are you

11   satisfied with this outcome?

12                   MS. KUCHARSKI:  Yes, Your Honor.

13                   THE COURT:  All right.  Mr. Kakani, did you

14   have any comments at all you wish to make?

15:53:28  15                   MR. KAKANI:  No, Your Honor.

16         Thank you.

17                   THE COURT:  All right.  Now, remember what I

18   told you:  You wrote me this letter, and you've got some

19   other papers here, but when you have a counsel, you don't

15:53:41  20   write the Court with requests setting out the law.

21   Supplementary -- you wrote something called supplementary

22   bail motion hearing and you sent that to me.  That hasn't

23   been filed, to the best of my knowledge.

24         If you want that -- something filed like that, you

15:54:00  25   talk to your counsel and see if they'll file it, but you

1    don't file that, so don't send those papers here to me no

2    more like that.

3                        THE DEFENDANT:  Yes, Your Honor.

4                        THE COURT:  And you only communicate with me

15:54:11  5    if it's something that you feel is so compelling that you

6    can't do it any other way.

7         Do you understand that?

8                        THE DEFENDANT:  Yes, Your Honor.

9                        THE COURT:  All right.  Okay.  That will be

15:54:21 10    all.

11                        MS. KUCHARSKI:  Thank you, Your Honor.

12                        MR. KAKANI:  Have a good afternoon, Judge.

13                                - - -

14              (Proceedings concluded at 3:54 p.m.)

15

16

17                     **C E R T I F I C A T E**

18         I certify that the foregoing is a correct transcript
     of the record of proceedings in the above-entitled matter
19    prepared from my stenotype notes.

20         */s/ Sarah E. Nageotte*              *12/5/2021*
          SARAH E. NAGEOTTE, RDR, CRR, CRC           DATE
21

22

23

24

25